## No. 16,645.

GATES RUBBER COMPANY *v.* TICE ET AL.
(239 P. [2d] 611)

Decided December 24, 1951.

Messrs. DENIOUS & DENIOUS, for plaintiff in error.

Messrs. GRAHAM & SCHEUNEMANN, for defendant in error Tice.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

WE are asked to review a judgment of the district court affirming an award of the Industrial Commission under the Colorado Occupational Disease Disability Act, being chapter 163, S.L. '45. Plaintiff in error will be referred to herein as employer or company, and the defendants in error will be designated as claimant and the Commission.

An award for total permanent disability was made upon a claim after full hearing. The substance of the finding was that the disability was "caused by irritation of the lung tissues by sulphur compounds, chlorine compounds, and toxic hydrocarbons, inhaled in dust, vapors, and mists encountered daily in claimant's employment." For twenty-three years claimant was employed in the "reclaim" plant of the employer, and particularly assigned to the job of "digester" operator. This particular operation is a part of the process of reclaiming old rubber, which first is ground to a very fine dust and conveyed by air pressure to a bin immediately above the digester, which may otherwise be described as a "pressure cooker." Part of claimant's duty was to release the

bin of dust into the digester, where the various chemicals and compounds were added and then put under steam pressure of about 375 degrees Fahrenheit, for approximately ten hours, when it was released from the bottom of the digester into a tank of water for washing purposes. Claimant testified that he inhaled dust particles that were in the air and also steam and vapors that arose when the hot contents of the digester were released into the wash tank creating a cloud or fog in the room where eight of these digesters were in almost continuous operation; that there are times, to use claimant's expression, that he "had to come up for air." Claimant introduced testimony that he was exposed to large quantities of rubber dust, zinc chloride, and mercaptan, oils that were used in the reclaim process.

On October 1, 1949, after being advised by the employer's or company physician, claimant filed his claim, stating that the nature of his disability was silicosis. It is not denied that the employer's physician told claimant that he should be placed in some other kind of work; however, he had better file his claim based on silicosis. It is stated in the claim that he left work on account of the occupational disease on April 21, 1949. The employer filed its notice of contest on October 18, 1949, denying liability as a result of an occupational disease sustained within the course of his employment.

In the progress of the claim, medical examinations disclosed that claimant was suffering from poisoning by sulphur and its compounds, chlorine and its compounds, and by toxic hydrocarbons; and on December 8, 1949, claimant requested amendment of his claim by substituting the medical discoveries above mentioned for the word "silicosis" as contained in the original claim. The claim was so amended as of the date of its original filing. Although now objected to as being filed too late, without further discussion, we say that the objection is not well taken because the original filing was made within the sixty-day statutory requirement; and since

598

the employer requested and obtained a continuance at the time the amendment was made and proceeded to trial without raising the objection, that the objection was waived; and in addition thereto, the undisputed facts show that the claimant was misled in the filing of the original claim on the basis of silicosis because of reliance upon information given him by the employer's physician, which now acts as an estoppel against the employer.

A rather unusual peculiarity of the so-called occupational disease act is that the burden of proof is upon claimant to establish by competent medical evidence, each and every fact of the conditions of liability; that is, the direct cause and connection between the conditions and the occupational disease, and that the result of an exposure occasioned by the employment can be fairly traced to the employment as a proximate cause, and not from a hazard to which workmen are exposed outside of the employment, and that the disease must be incidental to the character of the business, and that the contraction of the disease must appear to have had its origin in a risk connected with the employment and was a natural consequence.

There is no dispute as to the facts given by the claimant and other witnesses as to the conditions surrounding the employment, and that such conditions existed for a long period of time is well established. The contention seems to be that the disease from which claimant is disabled was not contracted by the exposure connected with the employment. All of the testimony by which this contention was sought to be supported comes from witnesses who are not actually experts, but if it could be said they were experts, there is no evidence of a thorough test as to the atmospheric conditions having been made. It appears that such a test would be rather extensive and over a considerable period of time, and to shorten this opinion on that particular question, it may well be summed up in the testimony of Mr. Church,

claimant's expert witness, who testified that without the tests it cannot be said whether a working atmosphere is potentially harmful. However, for all purposes here concerned with reference to such tests, the witness disposes of that question by saying, "No, my testimony is merely to the effect that without the tests you can't tell whether an atmosphere is potentially harmful or not. The final analysis as to a person that is breathing the material, if that person gets sick irrespective of what any tests show, that person just gets sick, and this would be merely to say whether it was potentially dangerous or not."

▨ ▨ Dr. Frank Princi, who testified for claimant, is a physician and director of the Division of Industrial Medicine of the University of Colorado Medical Center. His qualifications in this field, while not admitted, appear abundantly established. He made a thorough examination of claimant prior to the hearing, and on December 3, 1949 made his lengthy written report, an exhibit in the case, which concludes as follows: "This man is suffering from a chronic pulmonary interstitial fibrosis which was brought on by occupational exposure to sulphur dioxide, elemental sulphur, chlorine and its compounds, toxic hydrocarbons, and the disability in this case is total and permanent." He further testified at length before the referee. There was other medical testimony not seriously in conflict, and it appears by the award of the Commission that the claimant had met the burden of proof by medical testimony to the satisfaction of the Commission. Contrary to the statement of counsel for employer, the findings of the Commission on sufficient evidence are conclusive on this court with the exception of subsection (g) of section 4 of the Act entitled "Injurious Exposure." The Act specifically states that the determinations of the Commission under this section shall not be conclusive on either the district court or the supreme court. It is clear that the condition from which claimant is suffering was caused by

exposure to the poisonous elements in his employment. It is further established by the testimony of Dr. Princi, the only expert in his field testifying, that "the type of fibrosis from which claimant is suffering is not uncommon in the rubber reclaim industry, and it is an occupational hazard of that industry." "The weight to be accorded such testimony, * * * is a matter exclusively for the determination of the commission." *Black Forest Fox Ranch v. Garrett*, 110 Colo. 323, 134 P. (2d) 332.

The conclusions and opinions of claimant's medical experts, and other fully qualified experts, were initially corroborated by the opinion of the employer company's doctor who first examined claimant and found his lungs to be affected, and recommended that he be changed to some other kind of work. The record amply supports the Commission's finding of total and permanent disability in that it is definitely shown that any exertion necessary to follow any kind of employment brings on serious difficulty in breathing and could hasten claimant's death.

Dr. Princi stated he did not think claimant had long to live any way. This claimant was exposed daily over a period of many years, and our examination of the files convinces us that the Commission made explicit findings on all of the elements of proof required to justify its award, and specifically found that claimant is permanently and totally disabled because of a thickening of the alveoli and bronchioles which makes it difficult for oxygen to be transferred across the membrane into the blood stream, and that any exertion decreases the already depleted oxygen in the blood and is dangerous to claimant; that this lung condition was caused by irritation of the lung tissues by sulphur compounds, chlorine compounds and toxic hydrocarbons inhaled in dusts, vapors and mists encountered daily in claimant's employment.

The district court was right in. affirming the award

of the Commission, and its judgment will not be disturbed.

The judgment is affirmed.

MR. CHIEF JUSTICE JACKSON, MR. JUSTICE STONE, MR. JUSTICE ALTER and MR. JUSTICE MOORE concur.

MR. JUSTICE CLARK and MR. JUSTICE KNAUSS not participating.