No. 19,572.

CLIMAX MOLYBDENUM COMPANY, ET AL. *v.*
THE INDUSTRIAL COMMISSION OF COLORADO, ET AL.
(362 P. [2d] 565)

Decided May 29, 1961. Rehearing denied June 26, 1961.

Messrs. Dawson, Nagel, Sherman & Howard, Mr. Arthur J. Underwood, Jr., Mr. Raymond J. Turner, Messrs. Harold Clark Thompson, Louis Schiff, Alious Rockett, and Fred Boden Dudley, for plaintiffs in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. Peter L. Dye, Assistant, for defendant in error Industrial Commission of Colorado.

Messrs. Stinemeyer & Stinemeyer, for defendant in error Verl L. Vorhies.

*In Department.*

Opinion by Mr. Justice McWilliams.

Plaintiffs in error seek reversal of a judgment entered by the trial court affirming an award of the Industrial Commission of Colorado which granted to defendant in error, Verl L. Vorhies, compensation benefits as provided by The Colorado Occupational Disease Disability Act, C.R.S. '53, 81-18-1 through 31, hereinafter referred to as the OD Act.

We shall refer to the various parties as follows: Verl L. Vorhies as Claimant, Climax Molybdenum Company

as Employer, State Compensation Fund as Fund, and Industrial Commission of Colorado as Commission.

On January 5, 1956, Claimant filed with the Commission a claim against the Employer for compensation benefits as provided by the OD Act for total disability caused by silicosis. Hearing regarding this claim was first held on February 6, 1956, before a referee of the Commission, at which time the only witnesses called by any of the parties were the Claimant himself and his physician, one Kon Wyatt, M.D. Upon inquiry by the referee, the Employer and the Fund specifically elected not to call any witness. At the conclusion of this hearing Claimant received permission from the referee to submit later a written report from a William F. Stone, Jr., M.D. This report was submitted and thereafter on March 9, 1956, the referee denied the claim and assigned as his reasons therefor: (1) that Claimant failed to establish injurious exposure to harmful quantities of silicon dioxide dust in the manner required by the OD Act; and (2) that Claimant according to the medical evidence was only 50% disabled by silicosis and under the OD Act benefits are provided *if* and *only if* there be a total disability resulting from silicosis.

On May 23, 1956, Claimant filed with the Commission a petition seeking a review of the referee's order of March 9, 1956. In this petition Claimant contended that even though the evidence before the referee was perhaps limited in nature it was nonetheless sufficient to require a finding that Claimant was injuriously exposed to harmful quantities of silicon dioxide dust in the manner prescribed by the OD Act, particularly inasmuch as there was no evidence to the contrary. Accompanying this petition was a second written medical report from Dr. William F. Stone in which this time he categorically stated that Claimant was totally and permanently disabled from the silicosis. On June 7, 1956, the Commission approved, affirmed and adopted the referee's order of March 9, 1956, denying the claim.

On July 11, 1956, Claimant filed in the District Court a complaint seeking to set aside this action of the Commission, alleging that the award was contrary to the facts and the law. The Employer thereafter filed his answer thereto, and the Commission in apt time tendered its records and files as its defense to the various matters alleged in the complaint. On November 1, 1957, when the matter came on for trial, the trial court on its own motion remanded the case to the Commission with the order that the Commission take the oral testimony of Dr. Stone and make such testimony a part of the official record. It was additionally ordered that the Commission appoint another physician to examine the Claimant and submit a written report of his findings.

In compliance with this order of Court the Commission on January 23, 1958, took the oral testimony of Dr. William F. Stone, Jr.; on February 28, 1958, took the oral testimony of Dr. Allan Hurst, who examined the Claimant at the request of the Employer and the Fund; appointed a Dr. William E. Hay to examine Claimant on behalf of the Commission and took his oral testimony on May 29, 1958; and thereafter as directed by the prior order of court returned the record to the District Court.

On February 24, 1960, when the matter came on for hearing, the trial court again on its own motion remanded the matter to the Commission with the direction that it make "further findings and award based upon all the evidence, including the testimony of Doctors Hay, Stone and Hurst." Thereafter on March 14, 1960, the Commission vacated its earlier orders, granted the claim, and ordered that Claimant receive compensation in the amount of $31.50 per week beginning August 1, 1957, and continuing thereafter until the sum of $7,400 was paid. In general the Commission completely reversed its earlier findings and found that the Claimant was permanently and totally disabled as of July 31, 1957, and that Claimant had established his injurious exposure

to harmful quantities of silicon dioxide in the manner required by the OD Act. Inasmuch as the ultimate disposition of the case turns upon a determination as to whether there is sufficient competent evidence to support certain of the Commission's findings, it is believed advisable to set forth verbatim at least the controverted portions of this supplemental award. In this supplemental award of March 14, 1960, the Commission found, inter alia:

"That claimant was employed by respondent employer on November 1, 1936 and worked underground as a miner from 1938 to 1941. His age at the time of employment was 27 years. At that time he was rejected by the United States Army when physical examination disclosed that he was afflicted with silicosis, Grade II. Claimant at that time wished to give up mine work and return to the farm, but because of war conditions was not permitted to do so. He was thereupon transferred by his employer to its mill and worked there until 1949 as a mechanic. In the mill the ore is ground after it leaves the crusher. Exposure in the mill was generally less than in the mine but, at the time of transfer, claimant had already developed his silicotic condition. °

"During the period he was employed as a mechanic his work took him to all parts of the mill. In some parts of the mill dust conditions were not bad and in others they were very bad.

"From 1949 to 1952 he was employed in the by-products division of the mill. Dust conditions were about the same as in the mechanical department — sometimes good and sometimes very bad. From 1952 to August 11, 1955 he was employed in the packaging, loading and shipping departments. During 1954-1955 the employer built a new drying plant. This drying plant was a part of the packaging and shipping department. The ore was handled in a much drier condition from the time the drying plant went into operation and the conditions there were

extremely dusty. Claimant left work August 12, 1955 and his claim for silicosis was filed January 5, 1956.

\* \* \*

"That the exposure which claimant sustained was injurious is evident from the physical results of his employment. By 1941 he had developed silicosis Grade II, and, continuing in the respondent employer's employment where he continued his exposure to dust, he had by August 12, 1955 developed silicosis Grade III. After claimant left work on August 12, 1955 he attempted to secure employment and work at lower altitudes. His last gainful employment was from November, 1956 to July 31, 1957 at a dairy.

"The Commission further finds that claimant is permanently and totally disabled by reason of silicosis Grade III and has been so disabled since July 31, 1957. \* \* \* "

Having now suffered on remand an adverse decision by the Commission, the Employer and the Fund were permitted to file in the then pending action in the District Court a so-called counterclaim whereby they asked that the Commission's supplemental award of March 14, 1960, be set aside and in the alternative sought a further remand to the Commission for the purpose of permitting the Employer and the Fund an opportunity to put on their evidence as to the absence of an injurious exposure. Upon hearing the trial court on July 27, 1960, denied the Employer's request for a remand and affirmed the supplemental award of the Commission. By the present writ of error Employer and the Fund seek reversal of the judgment of the trial court.

The Employer and the Fund now concede that there is sufficient evidence to support the finding of the Commission that Claimant was permanently and totally disabled from silicosis as of July 31, 1957. However, the Employer contends that notwithstanding Claimant's total disability from silicosis he is still not entitled to compensation benefits under the OD Act unless he also

establishes, inter alia, the following: (1) that during the ten years immediately preceding his total disablement he was injuriously exposed to harmful quantities of silicon dioxide dust within the State of Colorado for a total period of not less than five years; (2) that he was injuriously exposed by *this* employer for each of at least sixty days subsequent to January 1, 1946 (the date the OD Act went into effect); and (3) that the total disability "had resulted within two years from the date of the employee's last injurious exposure to such disease [silicosis] while actually working for the employer against whom compensation is claimed." See C.R.S. '53, 81-18-10 (5) and (7) and 81-18-13.

The Employer and the Fund initially contend that there is insufficient competent evidence to support the finding of the Commission that Claimant was injuriously exposed to silicon dioxide in the manner prescribed and required by the OD Act whereas the Claimant adversely contends that there is sufficient evidence to support such a finding. As a corollary of this particular assignment of error, the Employer and the Fund additionally argue that on the issue of "injurious exposure" this Court is not bound by the finding of the Commission and that even though there might be *some* evidence to support such a finding this Court by specific statute may make its own findings in this regard. See C.R.S. '53, 81-18-4 (7). In either event it becomes necessary to review the record and ascertain the precise nature and extent of the testimony bearing on this issue of "injurious exposure."

In support of his claim the Claimant testified, and additionally he called two medical doctors, namely Dr. Kon Wyatt and Dr. William F. Stone, Jr. In resisting the claim the Employer and the Fund called only one witness, a Dr. Allan Hurst. The remaining witness, Dr. William Hay, was appointed by the Commission itself to examine Claimant. The testimony of all the medical doctors in the main pertained to the extent of Claimant's

disability from silicosis and is of only limited assistance in resolving the vexing issue of injurious exposure. It is true that Dr. Hay on cross-examination testified that one who had Grade II silicosis in 1941 could without any additional exposure have Grade III silicosis in 1957. But such is certainly not proof positive that *this* Claimant suffered no injurious exposure subsequent to 1941. Accordingly the suggestion by the Employer that this testimony elicited on cross-examination from Dr. Hay resolves the entire matter is oversimplification and without merit.

The record before the Commission discloses that Claimant in 1936 at the age of 27 first began to work for the Employer, who was then as now engaged in the mining and milling of molybdenum. From 1938 to 1941 Claimant worked as a miner for his Employer in its mine underground. In 1941 he received a physical examination at the instance of his draft board and was found to have Grade II silicosis. His Employer immediately thereafter conducted its own physical examination, and the diagnosis of Grade II silicosis was confirmed. Parenthetically, it is at this point perhaps appropriate to note that by statutory definition "silicosis" means "a disease of the lungs, *due to breathing air containing uncombined silicon dioxide ($SiO_2$) dust,* characterized anatomically by generalized nodular fibrotic changes throughout both lungs which are demonstrable by X-ray examination or by autopsy and resulting from any process or occupation involving the inhalation of silicon dioxide ($SiO_2$) dust." (Emphasis supplied.) See C.R.S. '53, 81-18-4 (5). Having established to its own satisfaction that Claimant suffered Grade II silicosis, his Employer then assigned him to work in the mill rather than in its mine underground. In the mill the ore was crushed, ground and prepared for shipment. From 1941 to August 12, 1955, Claimant was employed on various jobs, all within the mill. He testified that from 1936 to August 12, 1955, he was at all times exposed to some amount of

dust, though admittedly the amount varied from time to time and from place to place, depending on his particular job. He conceded that the dust was "worse" in the mine than in the mill, but characterized the dust conditions in the mill as at times "severe." He described his various jobs in the mill proper from 1941 to August 12, 1955, and spelled out in considerable detail the adverse working conditions which prevailed during all of 1954 and to July 1, 1955. In this connection he stated that although there was dust at all times throughout the entire eighteen years of his employment with this Employer that the conditions were markedly worse in 1954 and 1955. In his own words he described these conditions as follows: " * * * the last two years they built a new drying plant that worked different than the previous drying plants. The material was put down through the center * * * and the heat came in from all sides, and oil would catch fire sometimes in that plant and would even burn sulphur dioxide out of the material and it would become absolutely zero. Of course that's molybdenum itself. But there's some silica in it, and when it would catch fire it would become so dusty that sometimes you couldn't pack it — you couldn't get it in a barrel. There was times you couldn't even see a buggy to be able to load it into the car * * * it became so dusty that we couldn't see, even see our machines to get in to load the material * * *." In his testimony Claimant also mentioned that "In the mill you are grinding the ore after it comes from the crusher [and] the crusher is as bad as the mine." On July 1, 1955, Claimant's job as "jigger boss" was abolished, and he thereafter performed miscellaneous jobs all within the mill until he finally terminated his employment on August 12, 1955. In closing Claimant mentioned that ever since 1941 he was given yearly physical examinations by his Employer and that one reason for terminating his employment on August 12, 1955, was that because of his lung condition he felt unable to keep up with the work.

 The Employer and the Fund contend that there is insufficient evidence of a competent nature to support the finding by the Commission that Claimant was "injuriously exposed" in the manner required by the OD Act. We now hold this contention to be without merit. Claimant does not have to prove his claim with mathematical certainty or even beyond a reasonable doubt. In *Resurrection Mining Company, et al. v. Roberts, et al.,* 127 Colo. 559, 259 P. (2d) 275, this Court rejected the contention that the burden of proof resting on a Claimant under the OD Act is greater than that imposed on a plaintiff in an ordinary civil action or on a claimant in other claims before the Commission and held that even though the OD Act states that a claimant must "establish" all the essentials of his claim such means merely to "prove" the same, which this Claimant did to the satisfaction of the Commission. It is true that Claimant presented no expert testimony bearing on the issue of injurious exposure nor did he, for example, produce a day to day dust count for the eighteen years he worked for the Employer. But such is not the only method of establishing one's right to benefits under the OD Act. Lay testimony as to the dust conditions arising from toxic material is entirely proper; and where, as here, it is admitted that Claimant has disabling silicosis which, according to the statutory definition, is due "to breathing air containing uncombined silicon dioxide ($SiO_2$) dust," and further where it is undisputed insofar as the evidence before the Commission is concerned, that exposure to silica dust occurred on the Employer's premises, then such lay testimony, buttressed by the inferences properly deducible therefrom, is of sufficient stature to support an award of compensation benefits. See *Colorado Fuel and Iron Corporation v. Alitto, et al.,* 130 Colo. 130, 273 P. (2d) 725; *Gates Rubber Company v. Tice, et al.,* 124 Colo. 595, 239 P. (2d) 611; and *Resurrection Mining Co. v. Roberts,* supra. It is the Employer's theory that although Claimant as of 1957 admittedly did

have Grade III silicosis and was admittedly theretofore injuriously exposed on the Employer's premises that nevertheless such exposure in the instant case occurred prior to the effective date of the OD Act (January 1, 1946) and that actually there has been no injurious exposure since 1941. Claimant's testimony as to the dust conditions which prevailed throughout his eighteen years of employment certainly puts this matter in issue. On a record strikingly parallel to that in the instant case this Court in *Colorado Fuel and Iron Corporation v. Alitto,* supra, rejected a similar contention advanced by the Employer and in so doing affirmed an award of the Commission. In short, we hold that careful examination of the record convinces us there is sufficient evidence of a competent nature to support the findings of the Commission on the issue of injurious exposure within the meaning of the statute. Granted that in reviewing the issue of injurious exposure the statute [C.R.S. '53, 81-18-4 (7)] provides that the " * * * Determinations made under this subsection by the industrial commission of Colorado shall not be conclusive on either the district or supreme courts," nevertheless this Court under the facts and circumstances of this case is disinclined to disturb the findings of the Commission. In support of the foregoing, in addition to the *Tice, Roberts* and *Alitto* cases, cited supra, see *Kennecott Copper Corporation (Utah Copper Division) v. Industrial Commission,* 115 Utah 451, 205 P. (2d) 829, and *Orosco v. Poarch,* 70 Ariz. 432, 222 P. (2d) 805.

■ Alternatively, the Employer and the Fund contend that even if it be determined that there is sufficient evidence of a competent nature to uphold the Commission's award the case should nonetheless be remanded once more to the Commission to permit the Employer and the Fund opportunity to present their evidence on the issue of "injurious exposure." This argument is based upon the erroneous assumption that the Fund never had an opportunity to present evidence on this

issue. Such is believed not to be the fact. At the very first hearing held by the Referee on February 6, 1956, it was established, inter alia, that Claimant was employed by the Employer from 1936 to August 12, 1955. Accordingly, if the Employer and the Fund desired to present any evidence whatsoever, including evidence as to the absence of any injurious exposure, this was the obvious time to so do. However, such was not done. Rather, at the conclusion of Claimant's case the Referee pointedly asked counsel for the Employer and the Fund if he had any testimony to present to the Commission. After momentary hesitation and obvious reflection counsel stated: "I think I'll just rest the case as it stands." Having declined this golden opportunity to present their evidence, the Employer and the Fund cannot in this belated manner successfully complain that they never had the opportunity to present their case.

Judgment affirmed.

Mr. Chief Justice Hall and Mr. Justice Day concur.