Florence E. KRUMBACK, Widow of Leroy A. Krumback, Claimant, Petitioner,

v.

DOW CHEMICAL CO., (Employer); Travelers Insurance Co., (Insurer); The Industrial Commission of the State of Colorado and The Director of the Division of Labor of the State of Colorado, Respondents.

No. 82CA1443.

Colorado Court of Appeals, Div. III.

Sept. 1, 1983.

Rehearing Denied Oct. 20, 1983.

Certiorari Denied Feb. 27, 1984.

DeBoskey & Hiller, Bruce H. DeBoskey, David L. Hiller, Glasman, Jaynes & Carpenter, Ronald C. Jaynes, Denver, for petitioner.

Elliott & Barbo, James E. Elliott, Jr., Michael J. Barbo, Wheat Ridge, for respondents Dow Chemical Co. and Travelers Insurance Co.

J.D. MacFarlane, Atty. Gen., William Levis, Asst. Atty. Gen., Denver, for respondents The Industrial Commission of the State of Colorado and The Director of the Division of Labor of the State of Colorado.

Douglas Phillips, Denver, for amicus curiae Colorado AFL–CIO.

BERMAN, Judge.

Florence E. Krumback, widow of Leroy A. Krumback, petitions for review of the

Industrial Commission's order denying her request for death benefits. We set aside the order and remand for additional proceedings.

Leroy A. Krumback worked from January 1959 until December 1973 at the Rocky Flats Nuclear Weapons Plant, a Dow Chemical Company facility. During the course of his employment, Leroy was exposed to over 45 rems of external radiation. He also was involved in a number of industrial accidents as a result of which he sustained internal radiation contamination. Leroy retired from Dow Chemical in December 1973. On January 7, 1974, he died of cancer of the colon. His widow (claimant) filed for death benefits with the Industrial Commission, claiming that Leroy had died of an "occupational disease ... caused by overexposure to radioactive and fissionable materials."

In 1980, testimony was taken before a hearing officer of the Colorado Division of Labor. Testifying on behalf of the claimant were Dr. Alice Stewart, an English physician specializing in epidemiology, and Dr. Karl Morgan, a health physicist. Dow Chemical presented testimony by a biostatistician and a physician specializing in radiology and nuclear medicine.

The hearing officer found that the above experts' testimony was in conflict. He resolved this conflict "in favor of the claimant and conclude[d] that the claimant ... ha[d] proven by competent medical and scientific evidence, both an injurious exposure to radioactive materials and a causal connection between such exposure and the cancer of the colon from which the decedent died." He ordered Dow Chemical to pay Leroy's "medical, surgical and hospital expenses," not to exceed $20,000, and ordered compensation to claimant of $84 per week, not to exceed the statutory maximum sum of $20,266.75.

Dow Chemical appealed and obtained a reversal of the hearing officer's decision

before the Industrial Commission. Specifically, the Commission disallowed Dr. Morgan's testimony because, since he was not a physician, he could not supply the " 'competent medical evidence' required to carry the burden of proof under section 8–60–110 [C.R.S.1973]." It also found that Dr. Stewart's testimony was insufficient to support the award because, although she testified that Leroy had suffered "injurious exposure" to radiation, her testimony did not establish that this exposure caused Leroy's cancer and ultimate death. Therefore, the Commission concluded there was "a failure of the claimant to carry the burden of proof that the cancer was caused by the radiation ...," and it dismissed the claim for benefits.

I.

Claimant contends on appeal that the Commission's finding that causation need be established by "competent medical evidence" was in error. We agree.

Prior to its repeal in 1975,[1] § 8–60–110(1)(a), C.R.S.1973, provided, in relevant part, that an employer would not be liable for compensation unless the following conditions were satisfied:

"There is a direct causal connection between the conditions under which the work was performed and the occupational disease, and the disease can be seen to have followed as a natural incident of the work and as a result of the exposure occasioned by the nature of the employment and can be fairly traced to the employment as a proximate cause and does not come from a hazard to which workmen would have been equally exposed outside of the employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease need not have been foreseen or expected but after its contraction must appear to have had its origin in a

---

1. Colo.Sess.Laws 1975, ch. 71 at 311.

risk connected with the employment and to have flowed from that source as a natural consequence. The burden of proof shall be upon the employee to establish each and every such fact by *competent medical evidence.*" (emphasis supplied).

The legislation which repealed § 8–60–110, C.R.S.1973, provides that occupational diseases in general be treated in the same manner as claims based on occupational injuries. *See* § 8–41–108(2), C.R.S.1973 (1982 Cum.Supp.). As a result, § 8–52–102, C.R.S.1973 (1982 Cum.Supp.), now controls the decision in all claims proceedings. The evidentiary burden of proof applicable to § 8–52–102 has consistently been held to be "reasonable probability." *See Climax Molybdenum Co. v. Industrial Commission,* 146 Colo. 558, 362 P.2d 565 (1961); *Industrial Commission v. Havens,* 136 Colo. 111, 314 P.2d 698 (1957); *Ringsby Truck Lines v. Industrial Commission,* 30 Colo.App. 224, 491 P.2d 106 (1971). Thus, although the phrase "reasonable probability" does not appear in the statute, it is now the standard in all claims proceedings. All parties concede that such is the standard now.

However, here, because Leroy died in January 1974, and the "competent medical evidence" standard was not repealed until 1975, Dow Chemical argues that the Commission properly applied the pre-1975 standard, and that to do otherwise would constitute an improper retroactive application of the statute. We disagree.

Although changes in statutes are presumed to be prospective in operation, § 2–4–202, C.R.S.1973 (1980 Repl.Vol. 1B), and retroactive legislation is generally not favored, we do not perceive that either of these maxims apply here. Changes in procedural law are " 'generally to be regarded as immediately applicable to existing causes of action and not merely to those which may accrue in the future unless a contrary intent is expressed in the statute.' " *Suley v. Board of Education,* 633 P.2d 482 (Colo.

App.1981). *See also Nolan v. Industrial Commission,* 664 P.2d 253 (Colo.App.1982).

██ Although the issue appears to be one of first impression in Colorado, other jurisdictions which have faced this issue have held that changes in the burden of proof are procedural only and should be retroactively applied. *Florida Power & Light Co. v. Westinghouse Electric,* 579 F.2d 856 (4th Cir.1978); *Allen v. Fisher,* 118 Ariz. 95, 574 P.2d 1314 (Ariz.Ct.App. 1977); *United Securities Corp. v. Bruton,* 213 A.2d 892 (D.C.App.1965); *Bordelon v. Bordelon,* 381 So.2d 871 (La.App.1980); *State ex rel Sowle v. Brittich,* 7 Wis.2d 353, 96 N.W.2d 337 (1959). *See also 2 A. Sutherland, Statutory Construction* § 41.06 (Sands 4th Ed.1973). We adopt this rule here, and thus, since the hearings were held in 1980, the claimant's burden of proof was to establish a "reasonable probability" that Leroy's cancer was caused by his exposure to radiation during the course of his employment with Dow Chemical.

II.

██ Claimant further contends that, under either the "competent medical evidence" standard or the "reasonable probability" standard, it was error to disallow the testimony concerning causation by Dr. Morgan, the health physicist. We need not consider whether Dr. Morgan's testimony was competent to establish causation under the now repealed "competent medical evidence" standard, because as we determined in I, *supra,* that standard does not apply to this case. And, under the "reasonable probability" standard, we hold that it was error to disallow Dr. Morgan's opinion regarding causation.

Dr. Morgan's testimony was clearly helpful in determining the cause of Leroy's cancer. Although Dr. Morgan is not a physician, he is an internationally renowned health physicist who has spent 40 years studying the effects of radiation on the human body. Dr. Morgan was the founder of the Health Physics Society and was the editor-in-chief of its journal for

over 20 years. He was the first president of the International Committee of Radiological Protection and was charged with the responsibility for determining international standards for permissible concentrations of radiation in the human body. Dr. Morgan also served as chairman of the National Council of Radiological Protection Committee which established the American standards for permissible concentrations of radioactive substances, and these standards became the basis for Nuclear Regulatory Regulations. For 28 years Dr. Morgan was employed by the Oak Ridge National Laboratory, and was responsible for safeguarding the health of employees who were exposed to radiation. During that period he continually conducted research regarding the health effects of radiation. He has authored over 300 publications on this subject. Furthermore, it is significant that most of the other experts who testified in the hearings below based their conclusions, at least in part, on standards developed by Dr. Morgan.

Health physicists have been permitted to testify as to the effects of radiation and its cancer producing potential in at least one federal and one state court. *Mahoney v. United States*, 220 F.Supp. 823 (E.D.Tenn. 1963); *Greenberg v. Michael Reese Hospital*, 83 Ill.2d 282, 47 Ill.Dec. 385, 415 N.E.2d 390 (1980). We know of no decisions to the contrary. Accordingly, we hold, as a matter of law, that Dr. Morgan was qualified to testify as to the probable consequences of the radiation received by Leroy during the course of his employment, and as to the cause of his cancer.

## III.

■ Claimant also contends that the Commission erred in refusing to consider the testimony of Dr. Stewart regarding causation. We agree.

Petitioner argues that Dr. Stewart's testimony that there was a 55% probability that Leroy's cancer was caused by exposure to radiation on the job was sufficient to justify an award. Although, as noted below, the ultimate decision regarding causation is an issue within the discretion of the Commission, see IV, *infra*, we hold that the Commission erred in failing to place Dr. Stewart's testimony in the balance while making that decision.

## IV.

■ Claimant's final contention is that the Commission exceeded its authority under § 8–53–106(2)(b), C.R.S.1973 (1982 Cum.Supp.) by setting aside the referee's finding regarding causation. We disagree.

Section 8–53–106(2)(b) provides, in relevant part, as follows:

"The findings of evidentiary fact, as distinguished from ultimate conclusions of fact, made by the [hearing officer] shall not be set aside by the commission on review of the [hearing officer's] decision unless the findings of evidentiary fact are contrary to the weight of the evidence." [2]

Thus, the first question to be resolved is whether the following statements in the orders of the hearing officer are "findings of evidentiary fact" or "ultimate conclusions of fact":

"The Hearing Officer resolves the conflict in testimony of the expert witnesses in favor of the claimant and concludes that the claimant herein has proven by competent medical and scientific evidence, both an injurious exposure to radioactive materials and a causal connection between such exposure and the cancer of the colon from which the decedent died. The Hearing Officer adopts the opinions of the claimant's experts, namely, Drs. Stewart and Morgan, and finds that both the external and internal doses of radiation, independently of each other, and in combination, received by the decedent, arising out of and within the course of his employment with the respondent employer, caused the cancer of the colon which resulted in his death." Order dated June 2, 1981.

**2.** This section was recently amended, effective July 1, 1983. Colo.Sess.Laws 1983, Senate Bill

No. 386.

"The Hearing Officer specifically finds that Dr. Morgan's testimony that the internal dosage of radiation received by the deceased in the course of his employment for the respondent employer, was the cause of the deceased's cancer of the colon which led to his death, satisfies the requirements of causation and burden of proof under the Colorado Workmen's Compensation Act." Supplemental Order dated January 20, 1982.

*Womack v. Industrial Commission,* 168 Colo. 364, 451 P.2d 761 (1969) distinguishes evidentiary facts and ultimate conclusions of fact as follows:

"Evidentiary facts are those facts which are necessary for determination of the ultimate facts. Ultimate facts are the substance of the conclusions from the evidence .... The two classes of fact are distinct, but interrelated. Evidentiary facts are the premises upon which the conclusions of ultimate facts are based."

Recently, our Supreme Court elaborated on the above definitions by stating that "[f]indings of ultimate fact, as distinguished from raw evidentiary fact, involve a conclusion of law, or at least a determination of a mixed question of law and fact, and settle the rights and liabilities of the parties." *Lee v. State Board of Dental Examiners,* 654 P.2d 839 (Colo.1982). Application of the evidentiary facts to the "controlling legal standards" constitutes an ultimate conclusion of fact. *Lee v. State Board of Dental Examiners, supra.* See also 2 K. Davis, *Administrative Law Treatise* § 16.06 (1958).

 Here, the hearing officer determined that the testimony established "a causal connection between such exposure and the cancer of the colon from which the decedent died" and that this "satisfies the requirements of causation and burden of proof under the Colorado Workmen's Compensation Act." This conclusion resulting from an application of the facts to the "controlling legal standards," involved "a determination of a mixed question of law and fact," *Lee v. State Board of Dental Examiners, supra,* and constituted "the

substance of the conclusions from the evidence." *Womack v. Industrial Commission, supra.* Thus, the Industrial Commission did not exceed its power under § 8–53–106(2)(b), C.R.S.1973 (1982 Cum.Supp.) by reversing the hearing officer's ruling as to causation.

However, as noted *supra,* although the Commission had the power to make such a decision, the decision was reached after application of the wrong burden of proof standard and after improperly excluding the bulk of petitioner's evidence.

Accordingly, the order is set aside and the cause is remanded to the Industrial Commission for entry of an order which determines whether, after consideration of the testimony of both Drs. Morgan and Stewart, petitioner carried her burden of proof that there was a reasonable probability that Leroy's cancer was caused by his exposure to radiation while employed by Dow Chemical Company.

KELLY and TURSI, JJ., concur.