Frank J. ROBBOLINO, Petitioner,

v.

FISCHER–WHITE CONTRACTORS; State Compensation Insurance Fund; the Industrial Commission of the State of Colorado; and Director, Department of Labor and Employment, Division of Labor, State of Colorado, Respondents.

No. 86CA0727.

Colorado Court of Appeals, Div. III.

April 23, 1987.

Norton Frickey and Associates of Colorado Springs, P.C., Cameron Curry, Colorado Springs, for petitioner.

Paul Tochtrop, Denver, for respondents Fischer-White Contractors and State Compensation Ins. Fund.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert C. Lehnert, Asst. Atty. Gen., Denver, for respondents Indus. Com'n and Director, Dept. of Labor and Employment.

CRISWELL, Judge.

Frank J. Robbolino (claimant) seeks review of a final order of the Industrial Commission (Commission) which found his average weekly wage to be $240, based upon an

hourly rate of $6.00, rather than $11.00 which claimant asserts he was being paid, and which assessed his degree of permanent partial disability at three percent as a working unit. We set aside the order and remand for further proceedings.

Claimant was hired as a construction laborer and was scheduled to work 40 hours per week for an indefinite period on a project covered by the Davis-Bacon Act, 40 U.S.C. § 276a, et seq. He suffered an industrial injury on his second day on the job.

On July 30, 1982, claimant's employer and workmen's compensation carrier (employer) filed a general admission of liability. In this general admission, claimant's average weekly wage was stated to be $240. This admission advised claimant that it would be approved by the Director of the Division of Labor unless claimant contested it within thirty days, but the record contains no order or directive of the Director to that effect.

Claimant did not contest this admission at that time and he received benefits for temporary total disability, based upon an average weekly wage of $240, until September 1984. Claimant also received vocational rehabilitation benefits pursuant to a plan designed to train him as a machine operator with a maximum hourly wage of $5.50. However, claimant was allegedly uncooperative, and this rehabilitation program was ultimately terminated.

In April 1984, and again on October 1, 1984, the employer filed special admissions, specifically noting the period during which it conceded claimant to have been temporarily totally disabled and specifying the exact dollar amount of benefits which it conceded to be due. These special admissions also noted that the benefits described were based upon an average weekly wage of $240.

After the first of these special admissions was filed, claimant requested a hearing devoted to the issues of temporary and permanent disability and such a hearing took place on November 9, 1984. Immediately prior to the taking of evidence, the hearing officer inquired of claimant's counsel as to the precise issues involved and,

when told that claimant considered "the average weekly rate [to be] improper," counsel for the employer was asked whether he had any "objection to proceeding on that issue." Counsel specifically advised the hearing officer that he had none.

During the course of this hearing, claimant testified that, at the time of his injury, he was being paid at an hourly rate of $11.00 and produced a check stub, prepared by the employer, showing that a gross wage of $206.82 had been paid to claimant for 18 hours of work. Similarly, a representative of the employer testified that, at the time of his injury, claimant's rate of pay had been $11.00 per hour. This witness said that this pay rate was required because of the nature of the project upon which claimant was working and that he could not estimate how long claimant would have been employed upon that project had claimant not been injured.

However, because this testimony conflicted with the previous admissions of liability, the Commission determined it to be not credible. It also concluded that, since claimant had acquiesced in the rate set forth in the general admission by accepting benefits for two years without objection, he should not be allowed to raise the issue of the amount of his average weekly wage for the first time at the final hearing.

The Commission also determined that, because claimant had voluntarily withdrawn from the rehabilitation program without good cause, claimant's degree of permanent partial disability was equal to his physical impairment. Since claimant's physician had rated his permanent physical impairment as three percent, the Commission awarded claimant benefits based on a three percent permanent partial disability.

## I.

On appeal, claimant first asserts that the Commission erred in awarding benefits based upon an average weekly wage of $240, which assumed an hourly wage rate of $6.00, rather than of $11.00. We agree.

Section 8-47-101(1) and (2)(d), C.R.S. (1986 Repl.Vol. 3B), provides that, if an

employee is being paid by the hour, his average weekly wage is to be determined by considering the "hourly rate" at which the employee was working "at the time of the injury."

■ While credibility determinations are within the province of the trier of fact and such findings are normally binding on review, *Halliburton Services v. Miller,* 720 P.2d 571 (Colo.1986), here, claimant's testimony that he was earning $11.00 per hour was confirmed both by undisputed documentary evidence in the form of a check stub prepared by his employer and by the sworn testimony of an employer's representative. Under these circumstances, it was error, as a matter of law, for the Commission to find that claimant was earning only $6.00 an hour at the time of his injury. *See Associated Grocers of Colorado, Inc. v. Bendickson,* 36 Colo.App. 239, 538 P.2d 476 (1975).

The question of the claimant's proper average weekly wage does not turn upon an assessment of credibility. Rather, it concerns whether petitioner, after failing to contest the general admission of liability and receiving temporary benefits pursuant to that admission for a period in excess of two years, could later contest the accuracy of the amount of the average weekly wage utilized in computing the benefits received.

The employer asserts that, by not responding to its general admission of liability, claimant could not later object to the amount of the average weekly wage set forth in that admission. Under the circumstances portrayed by this record, we disagree.

At the time that the general admission was filed, there was no regulation requiring a claimant to contest the same within any specified period; nor does the record contain any order or directive from the Director of the Division of Labor requiring any response from claimant to that initial admission. *See Johnson v. McDonald,* 697 P.2d 810 (Colo.App.1985).

In October 1983, some months after the employer filed its general admission in this case, the Commission adopted a specific regulation requiring a claimant to respond within 60 days to any "Admission of Liability for *final payment* of compensation...." Industrial Commission Rule XI H.2., 7 Code Colo.Reg. 1101–3 (emphasis added). If we assume, arguendo, that the employer's last special admission of October 1, 1984, can be considered to be an admission "for final payment," claimant gave notice of his contest thereof prior to the commencement of the hearing on November 9, 1984—well within the required 60–day period.

Moreover, of decisive import here is that, prior to the receipt of testimony at this hearing, claimant expressly designated the average weekly wage as an issue to be determined, and in response, the employer's counsel raised no objection to addressing this issue and, indeed, presented sworn testimony confirming the accuracy of claimant's assertion. By these actions, the employer waived any objection concerning the timeliness of claimant's challenge to the wage determination. *See Gates Rubber Co. v. Tice,* 124 Colo. 595, 239 P.2d 611 (1951); *Woodruff World Travel, Inc. v. Industrial Commission,* 38 Colo.App. 92, 554 P.2d 705 (1976).

The evidence produced by both parties at this hearing undisputedly established that claimant was hired to work 40 hours per week at the hourly rate of $11.00. Since there was a waiver of any objection to the determination of this issue, claimant's benefits must be calculated upon an average weekly wage of $440 ($11 × 40 hours), rather than $240.

## II.

■ Claimant also asserts that the Commission erred in assessing his permanent partial disability at three percent without considering his lost income. We agree.

Section 8–49–101(5), C.R.S. (1986 Repl. Vol. 3B), provides that, if a worker voluntarily withdraws from a vocational rehabilitation program without good cause, the degree of permanent partial disability shall be determined as though the worker had successfully completed that program.

In this case, the evidence established that, had claimant successfully completed the rehabilitation program, he could have earned, at best, $5.50 per hour. Thus, claimant's permanent partial disability should have been determined from that perspective, and the Commission erred in determining, without considering these economic facts, that claimant's permanent partial disability was equal only to his physical impairment. *See Churchill v. Sears, Roebuck & Co.*, 720 P.2d 171 (Colo.App.1986).

The order is set aside and the cause is remanded to the Industrial Claim Appeals Office with directions to recalculate the temporary total disability benefits to which claimant is entitled, based upon an average weekly wage of $440, and to reconsider the degree of claimant's permanent partial disability consistent with the views set forth herein.

VAN CISE and STERNBERG, JJ., concur.